UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SIDNEY HAYES,                                                          **DECISION AND ORDER**

                                Plaintiff,                  10-CV-00380(M)

v.

SANDI CHARLES, et al.,

                                Defendants.
_____

        Plaintiff, an inmate, commenced this case *pro se*, seeking relief under 42 U.S.C. §1983, alleging that the defendants, who were employees of the New York State Department of Corrections and Community Supervision ("DOCCS") during the relevant period, were deliberately indifferent to his dental needs. Amended Complaint [9].[1] The parties have consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. §636(c) [15]. Before me is defendants' motion for summary judgment [37]. For the following reasons, defendants' motion is granted in part and denied in part.

**BACKGROUND**

        In this action, plaintiff seeks to recover for mistreatment of an alleged hole which he developed in his tooth in October 2008 while incarcerated at the Collins Correctional Facility ("Collins"), which allegedly remained untreated until the tooth was extracted nearly one year later on September 11, 2009, while he was incarcerated at Five Points Correctional Facility ("Five Points"). Plaintiff alleges that he "was subjected to unnecessary infliction of excruciating

---

      [1]     Bracketed references are to the CM/ECF docket entries.

pain, without the benefit of pain medication", while awaiting treatment. Amended Complaint [9], ¶32.

## Collins

When plaintiff arrived at Collins on April 30, 2008, he was seen by the dental department and no complaints were noted. Defendants' Statement of Undisputed Material Facts [37-1], ¶11; Charles Declaration [37-4], ¶6. On or about June 17, 2008, plaintiff requested to be "placed on emergency dental to have [a] problem tooth removed." Defendants' Statement of Undisputed Material Facts [37-1], ¶¶15, 16; [37-5], Bates No. 0145. He was examined by Donald D. Hellert, DDS, on June 19, 2008, x-rays were taken on June 23, 2008, and he was re-examined by Dr. Hellert on June 26, 2008, who extracted two of plaintiff's teeth on July 11, 2008. Defendants' Statement of Undisputed Material Facts [37-1], ¶¶17, 19, 20, 22.

Plaintiff testified that he developed a problem with another tooth in August or September of 2008, but did not did not request dental treatment until it "started bothering [him] more". Plaintiff's deposition transcript [37-5], p. 21. On October 20, 2008 he requested a dental visit due to "a hole in the side of [his] back tooth (right side)". [37-5], Bates No. 0143. That request did not indicate that plaintiff was experiencing pain. Id. However, plaintiff alleges that the pain he was experiencing was a seven on a scale of ten, and that defendant Sandi Charles, a dental assistant, was aware of the pain his dental problem was causing. Defendants' Statement of Undisputed Material Facts [37-1], ¶30; Plaintiff's Affidavit [39-1], ¶9.[2]

---

[2] However, when asked at his deposition whether he ever talked to anyone in the medical unit at Collins about the pain he was having in his tooth, plaintiff responded, "Not until, I want to say January", when he told an unidentified nurse that he had not seen a dentist. Plaintiff's deposition transcript [37-5], p. 26.

On October 24, 2008, Charles informed plaintiff that he was placed on a list to be called out to be seen by a dentist, and that he should "watch the call out for [his] name". [37-5], Bates No. 0139.  Plaintiff alleges that he made two additional written requests "directly to defendant Charles" to be seen by a dentist, but did not see a dentist before his transfer to Lakeview Correctional Facility ("Lakeview") on February 2, 2009.  Defendants' Statement of Undisputed Material Facts [37-1], ¶¶31-33; Plaintiff's Affidavit [39-1], ¶4.

### Lakeview

Upon his arrival at Lakeview, plaintiff was seen by a nurse, but he could not recall whether he advised her of his tooth, and his medical intake paper work does not indicate any dental problems.  Defendants' Statement of Undisputed Facts [37-1], ¶¶34-36.  On February 9, 2009 plaintiff asked to be seen by the dental department for the tooth that had been bothering him since October.  Id., ¶38; plaintiff's deposition transcript [37-5], p. 30.  A day later, he was informed that he would be called for a dental sick call. [37-5], Bates No. 0140.  Plaintiff characterizes the pain that he was experiencing at that time as being a seven on a scale of ten.  Plaintiff's deposition transcript [37-5], p. 31.  He alleges that he made additional requests to be seen by a dentist, spoke to a nurse about his problems, and received aspirin, Tylenol or Motrin for the pain. Defendants' Statement of Undisputed Material Facts [37-1], ¶¶40-43; plaintiff's deposition transcript [37-5], pp. 32-33.

Plaintiff was eventually seen on March 3, 2009 by defendant Richard Tenbrink, DDS, to "triage his needs", and was diagnosed with a cavity in a lower right side molar.  Defendants' Statement of Undisputed Material Facts [37-1], ¶¶44, 47, 48.  Dr. Tenbrink

determined that "a routine filling was necessary and he was placed on the list with other inmates in need of dental treatment." Tenbrink Declaration [37-7], ¶13. According to plaintiff, he told Dr. Tenbrink that "the medication [he] was able to get for minor pain from the nurses, did absolutely nothing for the dental pain that [he] was experiencing", and that Dr. Tenbrink "refused to fill it at that time, despite the fact that it was causing [him] extreme pain". Plaintiff's Affidavit [39-1], ¶¶13, 14. Plaintiff also states that he "continued to complain to . . . [Dr.] Tenbrink about his tooth and the extreme pain it caused and Dr. Tenbrink refused to provide the plaintiff treatment". Id., ¶16.

Corroborating plaintiff's version of events, he submits the declaration of Jeryl Grant [39-3], who shared a cell with him during his incarceration at Lakeview. Id., ¶3. According to Grant, plaintiff was in "extreme pain" and that "[n]o matter how much he cried and complained, and requested emergency dental treatment, his cries and condition was ignored". Id., ¶¶6, 7.

Plaintiff was seen by the medical staff at Lakeview on February 27, March 7, 11, 14, 16, 26, and 31, 2009 for other issues, but no complaints of tooth pain were noted. Caisley Declaration [37-3], ¶¶13-17. On May 2, 11, 19, and 27, 2009 plaintiff received ibuprofen for complaints of dental pain and no swelling was noted. [40], Bates Nos. 0092-95. According to plaintiff's ambulatory health records, on May 1, 9, and 24, 2009 plaintiff was signed up for sick call, but had his light off and remained in bed after sick call was announced. Id., Bates Nos. 0093-95, 0097; Caisley Declaration [37-3], ¶28.

On April 28, 2009, plaintiff filed a grievance because his tooth had not been treated, which was causing him "severe pain" and making it "difficult for [him] to eat, or sleep"

and causing him to loose "significant weight". Defendants' Statement of Undisputed Material Facts [37-1], ¶52; Amended Complaint [9], Ex. D.  At that point, plaintiff's tooth pain "got significantly worse".  Plaintiff's deposition transcript [37-5], p. 35.

In response to plaintiff's grievance, he was advised to contact the Facility Health Services Director ("FHSD").  Amended Complaint [9], Ex. D.  Consequently, by letter dated May 7, 2009, he advised defendant Ian Caisley, M.D., Lakeview's FHSD, of his complaint.  Id., Ex. E.  Dr. Caisley referred the matter to Nurse Johnson.  Caisley Declaration [37-3], ¶¶20-21.  Plaintiff's May 11, 2009 ambulatory health record states that he was evaluated by Nurse Johnson "at cell per MD Caisley's request" and that "Dental dept. made aware and they will look into it and drop the inmate a note." [40], Bates No. 0094.  On May 21, 2009, plaintiff wrote a letter to the dental department, indicating that he was in extreme pain and still had not been seen by a dentist.  Amended Complaint [9], Ex. E.  Dr. Caisley did not hear from plaintiff again, and was unaware that he was not seen by the dental department prior to his transfer on May 28, 2009 to Five Points.  Caisley Declaration [37-3], ¶¶ 25, 26.

### Five Points

Upon his arrival at Five Points on May 28, 2009, plaintiff received a health screening which indicated that he had a "hole in tooth".  Defendants' Statement of Undisputed Material Facts [37-1], ¶72.  On May 29, 2009, defendant Manesh Mewar, DDS, Five Points' dentist, reviewed plaintiff's dental chart and then saw plaintiff on June 3, 2009.  Id., ¶¶73, 75.  Dr. Mewar determined that the tooth required surgical extraction, and plaintiff was placed on a list to receive oral surgery.  Id., ¶¶80-82.  While awaiting surgery, plaintiff was able to obtain

ibuprofen for his pain.  Id., ¶86.  The tooth was eventually extracted on September 3, 2009 by an oral surgeon.  Id., ¶85.  Following the surgery, plaintiff was treated by Dr. Mewar for a dry socket that developed from the extraction.  Id., ¶¶92-94.

According to Drs. Tenbrink and Mewar, as DOCCS' dentists, they do not schedule appointments, call outs, or outside consultations or surgeries. Tenbrink Declaration [37-7], ¶8; Mewar Declaration [37-6], ¶7.

**ANALYSIS**

**A.     Summary Judgment Standard**

"A party moving for summary judgment bears the burden of establishing that there exists no genuine issue of material fact warranting a trial . . . . In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Gummo v. Village of Depew, N.Y., 75 F.3d 98, 107 (2d Cir.), cert. denied, 517 U.S. 1190 (1996); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"Once that burden has been established, the burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial . . . . To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor." Guerrero v. Lowe's Home Centers, Inc., 462 F. Supp.2d 399, 406 (W.D.N.Y. 2006) (Siragusa, J.), aff'd, 254 Fed. Appx. 865 (2d Cir. 2007) (Summary Order).

B.   **Deliberate Indifference Standard**

In order to establish a violation of the Eighth Amendment arising out of inadequate medical treatment, plaintiff must prove that defendants acted with "deliberate indifference to [his] serious medical needs". Estelle v. Gamble, 429 U.S. 97, 104 (1976). The "deliberate indifference" standard has both objective and subjective components. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994), cert. denied, 513 U.S. 1154 (1995). To satisfy the objective component, the alleged medical need must be "sufficiently serious." Id.

"[T]he Second Circuit determined that a cavity which is causing an inmate 'great pain' is considered a sufficiently serious medical condition under the Eighth Amendment." Ramos v. O'Connell, 28 F.Supp.2d 796, 802 (W.D.N.Y. 1998) (Curtin, J.). For purposes of this motion, defendants concede that plaintiff was suffering from a sufficiently serious medical condition. Defendants' Memorandum of Law [37-2], p. 5 of 11 ("even assuming, for the purposes of argument, that the plaintiff's condition can be considered objectively serious, the plaintiff can not demonstrate that the defendants were subjectively indifferent to his condition").[3]

Turning to the subjective prong, plaintiff must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). "The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. *See also* Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093 (2005)

---

[3]   Since defendants' Memorandum of Law [37-2] is not paginated, I have used the CM/ECF numbering.

(likening the necessary state of mind to "the equivalent of criminal recklessness"). In order to be found "sufficiently culpable," the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

"[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Nevertheless, "[i]n certain instances, a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan. Id.

"[D]ental conditions (like other medical conditions) vary in severity and that a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case." Harrison v. Barkley, 219 F.3d 132, 136-37 (2d Cir. 2000). For example, "[a]bsent intense pain or other exigency, the treatment of a cavity (in or out of prison) can safely be delayed by the dentist's schedule or the patient's dread or neglect, can be subject to triage or the management of care, can be mitigated or repaired temporarily, and can be coordinated with other related conditions that need to be treated together. Nevertheless, a tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction." Id. at 137.

Thus, "[a]though delay in providing a prisoner with dental treatment, standing alone, does not constitute an [E]ighth [A]mendment violation,' . . . a prisoner can state a claim of deliberate medical indifference under section 1983 if 'the delay was deliberate and that it caused

him to suffer unnecessary and wanton infliction of pain.'" Berry v. Wright, 2011 WL 231626, *5 (W.D.N.Y. 2011) (Schroeder, M.J.) (*quoting* Hunt v. Dental Department, 865 F.2d 198, 201 (9th Cir. 1989)). *See* Fuller v. Hohensee, 2008 WL 4826261, *11 (W.D.N.Y. 2008) (Schroeder, M.J.) ("While dental pain and toothaches can be excruciatingly painful and proper dental care is an important part of overall health, short, intermittent delays in appointment times, absent any indication of serious infection or aggravation of the condition and absent any knowledge of the inmate's complaints or suffering, cannot support a finding of an Eighth Amendment violation under section 1983"); Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995) ("Despite Knox's knowledge of Boyd's pain and suffering, Knox waited three weeks to complete a referral form. A three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983").

Moreover, an "outright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated" constitutes deliberate indifference. Harrison, 219 F.3d at 138 ("This is not a case of delayed treatment . . . . Defendants' conduct on this record can be construed as . . . a flat refusal of medical treatment for a condition that if left untreated is serious and painful" (emphasis omitted)).

### 1. Defendant Charles

Defendants argue that "[t]he fact that the plaintiff was not scheduled to have his cavity filled cannot be laid at the feet of Ms. Charles, as she could not actually treat the plaintiff, and could not arrange for him to be seen by anyone but the facility dentist." Defendants' Memorandum of Law [37-2], p. 5 of 11. Plaintiff responds that "[e]ven though Ms. Charles could

not treat the Plaintiff herself, it was her responsibility to arrange Plaintiff's dental appointment. Without her carrying out this responsibility, there was no way plaintiff could receive the necessary dental treatment." Plaintiff's Memorandum of Law [39-2], p. 4.

Defendant Charles concedes that she was one of the four individuals at that Collins responsible for scheduling appointments. Charles Declaration [37-4], ¶21. Although she suggests that the failure of plaintiff to be seen by Dr. Hellert could have been attributable to her absences, to the absences of her colleagues responsible for scheduling, or to Dr. Hellert (id., ¶¶22-25), she offers no explanation for why plaintiff was not seen by a dentist during the approximately four-month interval before his transfer to Lakeview despite his making two written follow-up requests directly to Charles to be seen by a dentist. Under these circumstances, and giving plaintiff every favorable inference, I conclude that there is a triable issue of fact as to whether she was deliberately indifferent to plaintiff's condition. See Williams v. Scully, 552 F.Supp. 431, 432 (S.D.N.Y. 1982) (finding a triable issue of fact as to whether defendants were deliberately indifferent where the plaintiff lost a filling and "was unable to obtain treatment, other than extraction, for five and one half months, during which time he suffered considerable pain" despite the defendants' "explanations for the inadequacy of Green Haven's dental program"); Price v. Reilly, 697 F.Supp.2d 344, 362 (E.D.N.Y. 2010) ("defendants' proffered explanation for the delay, i.e., the difficulty of finding a hospital because of transportation and security concerns, raises questions of fact and does not, as a matter of law, absolve them of liability").

**2.     Defendant Tenbrink**

Defendants initially argue that the "*sole* allegation against Dr. Tenbrink is that Dr. Caisley failed to direct him to provide the plaintiff with dental treatment", which "fails to allege personal involvement on the part of Dr. Tenbrink". Defendants' Memorandum of Law [37-2], p. 6 of 11 (emphasis added). The Amended Complaint [9], which includes allegations that "Tenbrink was deliberately indifferent to plaintiff's dental needs and pain and suffering" (id., ¶18), belies this argument.

Defendants also argue that "[s]ince Dr. Tenbrink did not schedule appointments, and was only at Lakeview once a week, he can hardly be held responsible for the fact that the plaintiff was not called out to have his cavity filled prior to being transferred to Five Points", and that "[w]hile plaintiff may have wanted different treatment for his tooth pain, disagreement over treatment does not amount to indifference." Defendants' Memorandum of Law [37-2], p. 6 of 11. In response, plaintiff relies heavily on DOCCS' policy for dental services, which he interprets as requiring Dr. Tenbrink to provide him with "immediate relief of pain". Plaintiff's Memorandum of Law [39-2], p. 5. However, "violations of prison policies in and of themselves generally do not rise to the level of a constitutional violation." Hewitt v. South Carolina Department of Corrections, 2010 WL 5600906, *4 (D.S.C. 2010), adopted 2011 WL 165387 (D.S.C. 2011) (addressing claim that facility violated its policy concerning dental examinations).

Nevertheless, plaintiff states that he "continued to complain to defendant Tenbrink about his tooth and the extreme pain it caused and Dr. Tenbrink, refused to provide the plaintiff treatment." Plaintiff's Affidavit [39-2], ¶16. Plaintiff's claim, if credited, is not merely a

disagreement over treatment, it amounts to a refusal to provide any treatment, much less adequate treatment.

Moreover, even if Dr. Tenbrink was unable to treat plaintiff's tooth when he examined him on March 3, 2009 and had no control over the scheduling of this treatment, giving plaintiff every favorable inference as the non-movant, Dr. Tenbrink was aware that plaintiff was in extreme pain and there exists a triable issue of fact as to whether he was deliberately indifferent to those complaints by failing to prescribe any pain medication (beyond the ibuprofen that was available to him) to alleviate plaintiff's pain while he awaited treatment.  Dr. Tenbrink [37-7] fails to address plaintiff's alleged complaints of pain and whether the ibuprofen that was  available to plaintiff was sufficient to treat his pain, which prevents me from discerning whether his conduct was the result of a medical judgement, negligence, deliberate indifference, or some other reason. *See* Price, 697 F.Supp.2d at 364 ("Drawing all reasonable inferences from the facts in favor of plaintiff, a rational jury could find that defendants acted with deliberate indifference by not changing plaintiff's pain medication despite his continued complaints that it was ineffective, by failing to take x-rays for several months, and by failing to follow-up on a November 2007 x-ray report indicating that further tests might be needed"); Thorne v. Cuevas, 2012 WL 1050056, *13 (D.Conn. 2012) ("there are issues of fact whether the plaintiff made Dr. Cuevas aware of the pain he was experiencing and whether Dr. Cuevas was deliberately indifferent to those complaints by failing to prescribe any pain medication to the plaintiff").

3.   **Defendant Caisley**

   Defendants argue that Dr. Caisley was not personally involved in the alleged deliberate indifference. Defendants' Memorandum of Law [37-2], pp. 8-10 of 11. I agree.

   "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Prior to Ashcroft v. Iqbal, 556 U.S. 662 (2009), it had been well settled that "[t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). However, in Iqbal, the Supreme Court clouded this issue when it rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution", concluding that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 556 U.S. at 677.

   Since Iqbal, some districts courts have determined that not all five of Colon's categories of conduct that may give rise to supervisory liability remain viable. *See e.g.*, Spear v. Hugles, 2009 WL 2176725, *2 (S.D.N.Y. 2009) ("only the first and third *Colon* factors have

survived the Supreme Court's decision in *Iqbal*" ); Bellamy v. Mount Vernon Hospital, 2009 WL 1835939, *6 (S.D.N.Y. 2009), aff'd, 387 Fed. Appx. 55 (2d Cir. 2010) (Summary Order) ("The Supreme Court's decision in *Iqbal v. Ashcroft* abrogates several of the categories of supervisory liability enumerated in *Colon v. Coughlin*. *Iqbal's* active conduct standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation. Only the first and part of the third *Colon* categories pass *Iqbal's* muster")[4]; Bryant v. County of Monroe, 2010 WL 4877799, *3 (W.D.N.Y. 2010) (Siragusa, J.) ("The Court . . . is persuaded by the analysis of . . . *Iqbal* . . . in *Bellamy*").[5]  However, I need not resolve this issue since I agree with defendants that plaintiff's allegations do not meet any of the Colon categories of supervisory liability. Defendants' Memorandum of Law [37-2], pp. 9-10 of 11.

---

[4] "[T]he *Iqbal* issue was not raised on appeal" in Bellamy. Stresing v. Agostinoni, 2012 WL 2405240, *4 (W.D.N.Y. 2012) (Skretny, J).

[5] In contrast to these cases, "the apparent majority view [is] that where . . . the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth, Eighth or Fourteenth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply." Shepherd v. Powers, 2012 WL 4477241, *10 (S.D.N.Y. 2012). However, adding to the uncertainty, "[t]he Second Circuit has not yet addressed which, if any, of the *Colon* categories survive *Iqbal*." Jamison v. Fischer, 2012 WL 4767173, *4 (S.D.N.Y. 2012). See Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) ("Although the Supreme Court's decision in *Ashcroft v. Iqbal* . . . , may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations, we need not reach *Iqbal's* impact on *Colon* in this case").

Here, Dr. Caisley's involvement was limited to receiving a letter of complaint dated May 7, 2009 from plaintiff and referring the letter to Nurse Johnson, who interviewed the plaintiff on May 11, 2009. Caisley Declaration [37-3], ¶¶19-22. This is insufficient to establish the personal involvement of Dr. Caisley. *See* Goris v. Breslin, 402 Fed.Appx. 582, 584 (2d Cir. 2010) (Summary Order) (concluding that there was a lack of personal involvement where, "Dr. Wright's personal involvement was limited to the receipt of two letters from Goris, which he promptly referred to other individuals for investigation and response"); Rush v. Fischer, 2013 WL 542641, *5 (S.D.N.Y. 2013) ("personal involvement has not been shown where a supervisor's only response to an inmate's complaint is to refer the complaint to the appropriate staff for investigation"); Josey v. Rock, 2013 WL 1500435, *11 (N.D.N.Y. 2013), adopted 2013 WL 1501029 (N.D.N.Y. 2013) ("A supervisor's referral of a complaint to a subordinate for investigation does not constitute personal involvement"); Soto v. Wright, 2012 WL 639166, *2 (S.D.N.Y. 2012) (same); Wright v. Genovese, 694 F.Supp.2d 137, 161 n. 16 (N.D.N.Y. 2010), aff'd 415 Fed.Appx. 313 (2d Cir. 2011) ("Plaintiff's letter of complaint to Defendant Wright is insufficient to establish personal involvement by the DOCS Chief Medical Officer, because he referred the matter to a subordinate for decision and did not personally make any medical decisions regarding the plaintiff").[6]

---

[6] Plaintiff relies upon Manley v. Mazzuca, 2004 WL 253314 (S.D.N.Y. 2004), which is distinguishable. Addressing a Fed. R. Civ. P. ("Rule") 12 dismissal motion, the court declined to dismiss the claims against the defendant, a member of the Inmate Grievance Program Central Office Review Committee ("CORC"), on personal involvement grounds, where "[d]efendants concede[d] that Defendant . . . 'investigated, or at least directed C.O.R.C. to investigate, plaintiff's allegations.'" Id. at *3.

Plaintiff appears to argue that since she was not a dentist, Nurse Johnson was not an appropriate staff member to refer his complaint. Plaintiff's Memorandum of Law [39-2], p. 7. Even accepting this argument, in addition to examining plaintiff, Nurse Johnson made the dental department aware of plaintiff's complaint and noted that "they will look into it". [40], Bates No. 094. Therefore, the claims against Dr. Caisley are dismissed for lack of personal involvement.

### 4. Defendant Mewar

Defendants argue that "[s]ince Dr. Mewar did not schedule outside consultations, he cannot be held liable for the delay in obtaining the plaintiff's surgery" and "[t]he fact that the plaintiff wanted some alternative treatment . . . does not amount to deliberate indifference". Defendants' Memorandum of Law [37-2], p. 8 of 11. Even accepting Dr. Mewar's claim that he did not schedule outside surgeries (Mewar Declaration [37-6], ¶7), plaintiff alleges that Dr. Mewar *refused* to treat his complaints of pain during the nearly 3 month interval he waited to have his tooth extracted. Plaintiff's Affidavit [39-1], ¶28. Since Dr. Mewar fails to address whether the ibuprofen that was available to plaintiff was sufficient to treat his pain and giving plaintiff every favorable inference as the non-movant, I conclude that there are triable issues of fact as to whether he was deliberately indifferent.

Although defendants point to Dr. Mewar's treatment *after* the removal of his tooth (defendants' Memorandum of Law [37-2], p. 8 of 11), this does not overcome his alleged refusal to treat plaintiff and his pain *prior* to the extraction of the tooth. See Baumann v. Walsh, 36 F.Supp.2d 508, 513 (N.D.N.Y. 1999) ("if Defendant McCollum were aware of Plaintiff's injuries and subsequent pain at the time those injuries occurred, yet failed to provide access to necessary

medical care or treatment, then an Eighth Amendment violation would be established despite the fact that medical treatment was later received").

## CONCLUSION

For these reasons, defendants' motion for summary judgment [37] is granted to the extent it seeks dismissal of Dr. Caisley, but is otherwise denied. A conference is scheduled for **September 30, 2013 at 10:00 a.m**. Defendants' counsel shall arrange for plaintiff's telephonic participation and counsel may also participate by telephone upon advance notice to chambers. The court will initiate the call.

**SO ORDERED.**

Dated: September 3, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge